**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
STEVE WILLIAMSON,

                              **Petitioner,**

  v.                                                        **9:06-CV-0116**
                                                                **(GLS)**

JOE T. SMITH, Superintendent,

                              **Respondent.**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
<u>**APPEARANCES:**</u>                    <u>**OF COUNSEL:**</u>

**FOR THE PETITIONER**:

**STEVE WILLIAMSON**
Petitioner, *pro se*
98-A-0453

**FOR THE RESPONDENT:**

**HON. ANDREW M. CUOMO**          **ASHLYN DANNELLY, Esq.**
Office of Attorney General          Assistant Attorney General
New York State Attorney General
120 Broadway
New York, NY 10271

**GARY L. SHARPE**
**UNITED STATES DISTRICT JUDGE**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

**I.     <u>Background</u>**

   **A.     <u>State Court Proceedings</u>**

       The state court records reflect that on the evening of March 23, 1997, in an apartment in

Troy, New York, petitioner, *pro se* Steve Williamson and Patricia Santana had an argument during

which he hit Santana "numerous" times.  *See* Transcript of Change of Plea of Steve Williamson

(12/2/97) ("Plea Tr.") at p. 15.  That altercation escalated, and at some point during the argument,

Williamson picked up a serrated steak knife from the kitchen and began stabbing her.  *Id.* at pp.

15-16.  Santana died from those wounds, and on April 2, 1997, a Rensselaer County grand jury returned Indictment No. B-10439 against Williamson.  *See* Appellant's Appendix on Appeal ("App.") at pp. A10-13 ("Indictment").  In that accusatory instrument, Williamson was charged with murder in the first degree, contrary to N.Y. Penal L. § 125.27(1)(a)(ix) and (b); murder in the second degree, in violation of N.Y. Penal L. § 125.25(1); two counts of assault in the second degree, contrary to N.Y. Penal L. § 120.05(1) & (9); and endangering the welfare of a child, in violation of N.Y. Penal L. § 260.10(1).  The Rensselaer County District Attorney ("District Attorney") thereafter filed a "Special Information Charging a Predicate Offense," which served as a formal notice that Williamson's prior 1992 Florida conviction for second degree murder would be considered an aggravating factor under N.Y. Penal Law § 125.27(l)(a)(ix), thereby making him eligible to be, *inter alia*, subject to the death penalty.[1]  *See* App. at p. A16 ("Death Notice").

Following negotiations between Williamson's trial counsel, Mark B. Harris, Esq., and the District Attorney, Williamson entered into a plea agreement with respect to the charges brought against him in the Indictment.  On December 2, 1997, Williamson appeared before Rensselaer County Court Judge Patrick J. McGrath for purposes of entering his guilty plea in accordance with the terms of the plea agreement.  At the beginning of that proceeding, Judge McGrath noted on the record that it was the court's understanding that "the People ha[d] made a determination pursuant to section 400.27 sub 1 of the CPL that the death penalty shall not be sought."  Plea Tr. at p. 2.  The prosecutor agreed with the court's observation, *id.*, and then described the terms of the plea

---

[1] The Court notes that subsequent to Williamson's unsuccessful appeal, New York's Court of Appeals, in *People v. LaValle*, 3 N.Y.3d 88 (2004), held that the jury deadlock instruction in New York's death penalty statute, New York's Criminal Procedure Law ("CPL") § 400.27, violated the State of New York's Constitution, and that court consequently invalidated the entire sentencing portion of New York's death penalty statute.  *Id.* at 130-31.

agreement, pursuant to which Williamson would plead guilty to murder in the first degree, and receive a sentence of life imprisonment without parole, in satisfaction of all charges brought against him in the Indictment. *Id.* Defense counsel then advised the court that the prosecutor had accurately portrayed Williamson's "understanding" regarding the case and noted that counsel and Williamson had "had an opportunity to confer on this matter for quite some number of days and have arrived at this disposition." *Id.* at pp. 2-3. The court then ascertained from Williamson that he had "talked to [his] attorneys about this," and that he had had "enough time to make a decision," as to whether he wished to plead guilty to the first degree murder charge. *Id.* at p. 3. Following a lengthy colloquy between Williamson and the court, Judge McGrath accepted Williamson's guilty plea. *Id.* at pp. 4-18.

On January 21, 1998, Williamson appeared with counsel for sentencing before Judge McGrath. At that time, Williamson declared that he was "very, very sorry" for what had transpired on March 23, 1997, and advised the court that he had arrived at the decision to plead guilty "not to be selfish and escape the death penalty, but to spare ... the entire Santana family [from] reliving this ordeal." *See* Transcript of Sentencing of Steve Williamson (1/21/98) at p. 15 ("Sentencing Tr."). Judge McGrath then sentenced Williamson, pursuant to the terms of the negotiated plea agreement, to a term of life imprisonment without the possibility of parole. *Id.* at pp. 16-17.

On March 17, 2000, before his direct appeal of his conviction had been perfected, Williamson filed, with the assistance of counsel, a motion to vacate his conviction pursuant to CPL § 440.10. *See* Respondent's Appendix on Appeal ("R.App.") at pp. RA140-49 ("Initial CPL Motion"). In that motion, Williamson's counsel noted that subsequent to Williamson's guilty plea,

3

the New York Court of Appeals decided the case of *Matter of Hynes v. Tomei*, 92 N.Y.2d 613 (1998). *See* CPL Motion at ¶ 11. In that decision, the Court of Appeals held that a defendant could not properly plead guilty to first degree murder while the prosecution's notice of its intent to seek the death penalty was still pending. *Id.* at ¶ 12 (citing *Hynes*, 92 N.Y.2d at 629). Counsel argued in his application that when Williamson pleaded guilty to the first degree murder charge, the Death Notice had not been formally withdrawn by the prosecutor, and that, as a result, Williamson's conviction was invalid. *Id.* at ¶¶ 11-27.

Williamson filed a *pro se* "addendum" to that motion in which he argued that he was denied the effective assistance of counsel during pre trial proceedings, plea negotiations, and at sentencing. *See* R.App. at pp. RA151-65. In that submission, he argued that, because he was on Prozac® at the time of his guilty plea, and counsel never requested an evaluation of Williamson's competency, his guilty plea was invalid. *Id.* at pp. RA154-56. The District Attorney filed an affirmation and memorandum of law in opposition to Williamson's motion, *see* R.App. at pp. RA166-92,[2] and Judge McGrath denied that motion in the court's order dated August 25, 2000. *See* R.App. at pp. RA193-97 ("August, 2000 Order").

On January 31, 2002, the New York State Supreme Court, Appellate Division, Third Department granted Williamson permission to appeal the denial of his Initial CPL Motion to the Third Department, *see* R.App. at p. RA2, which appeal that court consolidated with Williamson's direct appeal of his conviction. In its decision dated January 23, 2003, the Appellate Division denied and dismissed that consolidated appeal. *See People v. Williamson*, 301 A.D.2d 860 (3d

---

[2] The last page of the District Attorney's brief in opposition to Williamson's Initial CPL Motion is blank. *See* R.App. at p. RA192.

Dept. 2003).  On June 16, 2003, New York's Court of Appeals denied Williamson's application for leave to appeal such decision to that court.  *See People v. Williamson*, 100 N.Y.2d 567 (2003).

On February 25, 2004, petitioner filed a *pro se* application for a writ of *error coram nobis* with the Third Department, alleging therein that he was denied the effective assistance of appellate counsel.  By letter dated March 29, 2004, Williamson advised the Appellate Division that he wished to withdraw that application, and, in a letter dated April 2, 2004, an Assistant Deputy Clerk of that court advised Williamson that his *coram nobis* application had been marked withdrawn.

On April 6, 2004, Williamson filed another *coram nobis* application in which he argued that his appellate counsel was ineffective because he failed to argue on appeal that:  i) N.Y. Penal Law § 125.27(l)(a)(ix) was unconstitutional; and ii) Williamson's trial counsel was ineffective for failing to assert that constitutional challenge.  *See* April 6, 2004 *coram nobis* application ("April, 2004 CNA").  The District Attorney opposed that application, and, by affirmation dated May 12, 2004, Williamson filed a reply to the District Attorney's opposition papers.  In an order dated May 21, 2004, the Third Department denied Williamson's April, 2004 CNA, *see People v. Williamson*, No. 15236 (3d Dept. May 21, 2004), and his application for leave to appeal that decision is alleged to have been denied by the New York Court of Appeals on September 13, 2004.[3]

On August 12, 2004, petitioner filed, *pro se*, a second CPL§ 440.10 motion to vacate his conviction ("Second CPL Motion").  In that application, Williamson asserted that:  i) the prosecutor committed misconduct in failing to notify Williamson that the Death Notice had been

---

[3] This Court was not provided a copy of the Court of Appeals' order denying Williamson's leave application, and that decision was not reported by that court in the Westlaw or Lexis legal databases.

withdrawn; and ii) his guilty plea was not knowingly or voluntarily entered because neither he nor his counsel knew that the Death Notice had been withdrawn at the time Williamson entered his guilty plea. *See* Second CPL Motion. The District Attorney submitted an affirmation in opposition to that application, and Williamson thereafter submitted a reply in further support of his motion. In a Decision and Order dated January 25, 2005, Judge McGrath denied Williamson's Second CPL Motion ("January, 2005 Order"). That court specifically found that the issues Williamson raised in his Second CPL Motion were largely addressed in the Third Department's decision denying Williamson's appeal, and, to the extent that he had presented any allegations that were not directly addressed by that decision, such claims "could have been addressed" by Williamson in that appeal. January, 2005 Order at p. 2. Judge McGrath therefore denied the Second CPL Motion pursuant to CPL §§ 440.10(2)(a) & 440.10(3)(c). *See* January, 2005 Order at pp. 2-3.[4] Petitioner sought leave to appeal that order, however on April 15, 2005, the Appellate Division denied Williamson's leave application. *People v. Williamson*, No. 15938 (3d Dept. Apr. 15, 2005).

On October 21, 2004, petitioner filed another *coram nobis* application with the Third Department ("October, 2004 CNA"). In support of that request, Williamson asserted that he received the ineffective assistance of appellate counsel because such counsel failed to argue on appeal that the prosecutor failed to comply with the CPL in withdrawing the Death Notice. The District Attorney opposed that request, and Williamson submitted a reply in further support of his application. In a decision dated December 13, 2004, the Appellate Division denied the October,

---

[4] Judge McGrath further opined that if he were to have reached the merits of Williamson's claims, he "would have denied the motion on the merits." *See* January, 2005 Order at p. 3 (citing CPL § 440.10(4)(a)).

6

2004 CNA, *People v. Williamson*, No. 15710 (3d Dept. Dec. 13, 2004), and New York's Court of Appeals denied his application for leave to appeal that decision on April 6, 2005. *People v. Williamson* (Ct. App. Apr. 6, 2005).

On July 22, 2005, Williamson filed his final request for a writ of *error coram nobis* ("July, 2005 CNA"). In that submission, Williamson argued his appellate counsel was ineffective because he failed to raise on appeal the claim that trial counsel was ineffective in allowing Williamson to plead guilty "under a death penalty statute [counsel] knew was unconstitutional" and by failing to object to the fact that the County Court lacked jurisdiction to accept the guilty plea while the Death Notice "was still pending." *See* July, 2005 CNA. Williamson also reasserted in that submission his claim that appellate counsel was ineffective for failing to argue that the plea was invalid because the prosecutor failed to file a written notice of his withdrawal of the Death Notice. *Id.* The District Attorney opposed that request, and on September 12, 2005, the Appellate Division denied such application. *People v. Williamson*, No. 16331 (3d Dept. Sept. 12, 2005). Williamson's request for leave to appeal that decision was denied by New York's Court of Appeals on January 19, 2006. *People v. Williamson* (Ct. App. Jan. 19, 2006).

**B.**    **This Action**

On January 30, 2006, Williamson filed a *pro se* petition seeking a writ of habeas corpus in this District. Dkt. No. 1 ("Petition"). He also filed a supporting memorandum of law along with his petition. Dkt. No. 3 ("Supporting Mem."). In his petition, Williamson argues that: i) his guilty plea was not knowing, intelligent, and voluntary because he was "not adequately informed of his available options" by counsel and because the plea was made under threat of execution; ii) he was denied the effective assistance of trial counsel because his attorney did not investigate

7

whether the prosecutor had "orally" withdrawn the notice to seek the death penalty; iii) he was denied the effective assistance of appellate counsel because such counsel failed to argue on appeal that trial counsel was ineffective because he allowed Williamson to plead guilty to an unconstitutional criminal statute, and by not arguing that the trial court lacked jurisdiction to accept his guilty plea; and iv) his due process rights were violated because the prosecutor failed to follow the statutory requirements established by the CPL in attempting to withdraw the Death Notice.  *See* Petition.

United States Magistrate Judge David E. Peebles thereafter directed the respondent to file a response to Williamson's petition, Dkt. No. 5, and on August 9, 2006, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed a response in opposition to Williamson's petition.  *See* Dkt. No. 10.  Included in that submission is respondent's memorandum of law in opposition to petitioner's habeas application ("Resp. Mem.").

Petitioner was thereafter given permission to file a "traverse" in further support of his habeas application, *see* Dkt. No. 14, which he filed with the Court on October 6, 2006.  Dkt. No. 15 ("Traverse").  This action is currently before this Court for disposition.[5]

## II.   <u>Discussion</u>

### A.   <u>Standard of Review</u>

The enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard, the Second Circuit noted

---

[5] Pursuant to General Order No. 32, this Court hereby rescinds the prior reference of this case to Magistrate Judge David E. Peebles.

in *Rodriguez v. Miller*, 439 F.3d 68 (2d Cir. 2006) that:

> a federal court may award habeas corpus relief with respect to a
> claim adjudicated on the merits in state court only if the adjudication
> resulted in an outcome that:  (1) was "contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States"; or (2) was
> "based on an unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding."

*Rodriguez*, 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d)); *see also DeBerry v. Portuondo*, 403

F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v.*

*LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).  In providing guidance concerning application of this

standard, the Second Circuit has noted that:

> [A] state court's decision is "contrary to" clearly established federal
> law if it contradicts Supreme Court precedent on the application of a
> legal rule, or addresses a set of facts "materially indistinguishable"
> from a Supreme Court decision but nevertheless comes to a different
> conclusion than the Court did.  [*Williams v. Taylor*, 529 U.S. 362,]
> at 405-06 [2000]; *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir.
> 2001).... [A] state court's decision is an "unreasonable application
> of" clearly established federal law if the state court "identifies the
> correct governing legal principle from [the Supreme] Court's
> decisions but unreasonably applies that principle to the facts" of the
> case before it.  *Williams*, 529 U.S. at 413.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147,

152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining

whether the state court's determination was merely incorrect or erroneous, but instead whether

such determination was "objectively unreasonable."  *Williams*, 529 U.S. at 409; *see also Sellan v.*

*Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001).  Objectively unreasonable in this context means

"'some increment of incorrectness beyond error is required'" in order to grant a federal habeas

application.  *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quoting *Francis S.*, 221 F.3d at 111).

> ### B.  Substance of Williamson's Claims

> #### 1.  Ground One

Williamson initially argues that his guilty plea was not voluntarily made because it "was the product of the threat of execution."  *See* Supporting Mem. at Point I; *see also* Petition.  He specifically asserts that he only pleaded guilty because "the death notice [was] looming over petitioner's head," Supporting Mem. at p. 16, and claims that the Third Department's decision rejecting his claim challenging the propriety of his plea is contrary to clearly established Supreme Court precedent.  *Id*. at p. 15.

> #### i.  Clearly Established Supreme Court Precedent

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see also Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) (United States Constitution requires that guilty plea be knowingly and voluntarily entered); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (plea is valid when it is both knowingly and voluntarily made).

Additionally, the Supreme Court has provided courts with guidance in considering challenges to guilty pleas made in death penalty cases.  In *United States v. Jackson*, 390 U.S. 570 (1968), the Supreme Court held that the federal kidnapping statute, 18 U.S.C. § 1201, which provided that the jury could recommend the death penalty if it found a defendant guilty, but which provided no death penalty provision for those who pleaded guilty or who were tried before a

judge, was unconstitutional because it discouraged defendants from seeking a jury trial and

therefore imposed "an impermissible burden" on defendants who exercised their constitutional

right to not plead guilty and demand a trial by jury.  *Jackson*, 390 U.S. at 572.  Subsequent to

*Jackson*, the Supreme Court decided *Brady v. United States*, 397 U.S. 742 (1970).  In *Brady*, the

Supreme Court expressly cautioned courts against interpreting *Jackson* to stand for the proposition

that a defect in a death penalty statute necessarily required invalidating an otherwise valid guilty

plea.  Specifically, the *Brady* Court observed:

> *Jackson* ruled neither that all pleas of guilty encouraged by the fear
> of a possible death sentence are involuntary pleas nor that such
> encouraged pleas are invalid whether involuntary or not.  *Jackson* ...
> neither fashioned a new standard for judging the validity of guilty
> pleas nor mandated a new application of the test theretofore
> fashioned by courts and since reiterated that guilty pleas are valid if
> both 'voluntary' and 'intelligent.'

*Brady*, 397 U.S. at 747 (quoting *Boykin*, 395 U.S. at 242).  Thus, the *Brady* Court recognized that

a guilty plea is not rendered involuntary merely because the defendant entered into the agreement

to avoid the death penalty.  *Brady*, 397 U.S. at 747; *see also Parker v. North Carolina*, 397 U.S.

790, 795 (1970) ("an otherwise valid plea is not involuntary because induced by the defendant's

desire to limit the possible maximum penalty to less than that authorized if there is a jury trial").

### ii.    Contrary To, or Unreasonable Application of, Clearly Established Supreme Court Precedent

In rejecting Williamson's claim that his guilty plea was involuntary or otherwise invalid,

the Third Department observed:

> The record of the plea colloquy reflects that County Court
> conducted a detailed allocution ascertaining that defendant
> understood the nature and consequences of his plea, including the
> rights being relinquished as a result of the plea.  Although defendant
> now contends that, at the time of the plea, he was impaired by his

11

> use of antidepressant medication, County Court fully explored
> defendant's use of this medication and ascertained that he was not
> affected by the medication, was thinking clearly and understood the
> impact of his plea.  Accordingly, we conclude that defendant's plea
> was knowing, voluntary and intelligent.

*Williamson*, 301 A.D.2d at 861-62.  This Court must therefore ascertain whether the foregoing decision is either contrary to, or represents an unreasonable application of, the above-referenced Supreme Court precedent.

In support of his claim that he could not properly plead guilty to the first degree murder charge while the Death Notice was purportedly still pending, Williamson principally relies on the Supreme Court's decision in *Jackson* and the decision of New York's Court of Appeals in *Hynes*. *See* Supporting Mem. at pp. 15-33; Traverse at pp. 3-5.[6]  Williamson specifically asserts that because the prosecutor did not withdraw, in writing, the Death Notice that had been previously filed in the related criminal matter, such notice was still in effect at the time of the plea and, under *Hynes*, rendered the plea invalid.[7]  *See* Supporting Mem. at pp. 15-19.

---

[6] Petitioner also cites *Griffith v. Kentucky*, 479 U.S. 314 (1987) in support of this aspect of his habeas claim.  In *Griffith*, the Supreme Court noted that "new rule[s] for the conduct of criminal prosecutions [are] to be applied retroactively to all cases ... pending on direct review." *Id.*, 479 U.S. at 328.  Williamson asserts that on appellate review, the state courts were required to consider the effect of the Court of Appeals' holding in *Hynes* on Williamson's guilty plea, notwithstanding the fact that such decision was decided after Williamson pleaded guilty to the charge.  *See* Supporting Mem. at pp. 14, 15 and 18; Traverse at p. 3.  However, since the Appellate Division specifically cited *Hynes* in its decision denying Williamson's appeal, *see Williamson*, 301 A.D.2d at 861, the issue of whether the state courts retroactively considered the holding in *Hynes* to the benefit of Williamson, as mandated by *Griffith*, is not dispositive of the issues before this habeas court.

[7] To the extent Williamson asserts that the Death Notice was ***never*** withdrawn, *see* Traverse at pp. 8-9, this Court disagrees, and instead adopts the Appellate Division's determination that the prosecutor "orally withdrew its notice of intent to seek the death penalty." *Williamson*, 301 A.D.2d at 860.

Subsequent to *Hynes*, New York's Court of Appeals decided the case of *People v. Edwards*, 96 N.Y.2d 445 (2001).  In *Edwards*, the Court of Appeals expressly held that "any *Jackson-Hynes* infirmity does not – in and of itself – render invalid an otherwise valid guilty plea."  *Edwards*, 96 N.Y.2d at 454.[8]

The above cases make clear the fact that both the Supreme Court and New York's Court of Appeals have rejected the argument advanced by Williamson herein, i.e., that a guilty plea encouraged by the threat of a possible death sentence is *per se* invalid.  Instead, those courts have opined that, in such cases, courts must consider whether the plea is voluntary and intelligent.  *See Brady*, 397 U.S. at 747; *Edwards*, 96 N.Y.2d at 454.  Therefore, the transcript of Williamson's change of plea must be reviewed to determine whether his guilty plea reflected a voluntary and intelligent choice among the alternative courses of action open to him at that time.

Initially, the Court notes that such transcript establishes that both Williamson and his counsel were plainly aware that the District Attorney did ***not*** intend to pursue the death penalty against petitioner.  Specifically, the record demonstrates that prior to the entering the guilty plea: i) Judge McGrath noted, in Williamson's presence, that it was the court's understanding that, pursuant to CPL § 400.27(1), the prosecution was ***not*** seeking the death penalty;[9] ii) the District

---

[8] In *Edwards*, the prosecution withdrew the notice of its intent to seek the death penalty ***after*** the appellant's plea allocution, but before the plea actually became effective by its acceptance by the court.  *Edwards*, 96 N.Y.2d at 451.  The Court of Appeals upheld the validity of the plea because, *inter alia*, the record established that the plea was both knowing and voluntary.  *See Edwards; see also Batts v. Conway*, No. 07-CV-1927, 2008 WL 1836946, at *6 (E.D.N.Y. Apr. 22, 2008) (denying habeas claim challenging validity of guilty plea in death penalty case) (citing *Edwards*).

[9] That section of the CPL, provided, in part, at the time of Williamson's plea:
   1. Upon the conviction of a defendant for the offense of murder in
   the first degree as defined by section 125.27 of the penal law, the

Attorney specifically confirmed the accuracy of the court's understanding regarding that issue; and iii) defense counsel thereafter noted that he and Williamson had conferred about the criminal matter and had arrived at the decision to plead guilty. *See* Plea Tr. at pp. 2-3.

During the extensive colloquy between Judge McGrath and Williamson that followed the above discussion, petitioner acknowledged, *inter alia*, that: i) he was satisfied with the representation he had been afforded by counsel; ii) such counsel had met with him to discuss the advantages and disadvantages of entering a guilty plea; iii) the only medication he had been taking in the preceding month did not prevent him from thinking clearly and understanding everything that was transpiring in the courtroom at the time of his plea; iv) he was aware that he had the right to a jury trial on the charges brought against him; v) he knew of his right to remain silent and to not incriminate himself; vi) he was aware that by pleading guilty, he was forfeiting those rights and various other rights he would have enjoyed if he proceeded to trial, including the right to cross-examine all prosecution witnesses and his ability to testify in his own defense; vii) he had not been threatened, forced or coerced into pleading guilty; viii) he was entering the guilty plea freely and voluntarily; and ix) he had engaged in the conduct which established his guilt of the first degree murder charge. *See* Plea Tr.

In sum, the Court is satisfied that Williamson's guilty plea was knowing, voluntary and intelligent. This Court therefore adopts the Third Department's decision rejecting Williamson's

---

court shall promptly conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to death or to life imprisonment without parole pursuant to subdivision five of section 70.00 of the penal law. ***Nothing in this section shall be deemed to preclude the people at any time from determining that the death penalty shall not be sought in a particular case****....*
CPL § 400.27(1) (emphasis added).

14

claim that his guilty plea was invalid, *see Williamson*, 301 A.D.2d at 861-62, and accordingly

denies his first ground for relief.

### 2.      Grounds Two and Three

In his second ground, Williamson asserts that he received the ineffective assistance of trial

counsel.  *See* Petition, Ground Two.  His third claim for relief argues that he received the

ineffective assistance of appellate counsel.  *Id.*, Ground Three.

### i.      Clearly Established Supreme Court Precedent

The Sixth Amendment to the United States Constitution provides that:  "[i]n all criminal

prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his

defence."  U.S. Const., Amend. VI.  To establish a violation of this right to the effective assistance

of counsel, a habeas petitioner must show both:  i) that counsel's representation fell below an

objective standard of reasonableness, measured in light of the prevailing professional norms; and

ii) resulting prejudice that is, a reasonable probability that, but for counsel's unprofessional

performance, the outcome of the proceeding would have been different.  *Strickland v. Washington*,

466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles

that govern claims of ineffective assistance of counsel" were established in *Strickland*).

Moreover, it is well-settled that the Sixth Amendment's right to the effective assistance of

counsel requires that indigents be provided with effective counsel for their first appeal as of right.

*Douglas v. California*, 372 U.S. 353, 358 (1963).  Consequently, an individual is entitled to the

effective assistance of appellate counsel.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985) (citations

omitted).  The proper standard for evaluating a claim that appellate counsel was ineffective is the

test enunciated in *Strickland*.  *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Smith v.*

*Murray*, 477 U.S. 527, 535-536 (1986)); *see also Penson v. Ohio*, 488 U.S. 75, 86-88 (1988).

> ### ii.   Contrary To, or Unreasonable Application of, Clearly Established Supreme Court Precedent

> #### (a)   Trial Counsel

Petitioner offers several theories in support of his claim that trial counsel was ineffective. He initially argues that such counsel "was completely unaware that the prosecutor had made an 'oral' withdrawal of the notice of intent to seek the death penalty," and that, at the time of the plea, "petitioner and counsel were both operating under the mistaken impression that petitioner was still facing the death penalty."  Supporting Mem. at pp. 20-21.  In support of this claim, Williamson refers the court to a copy of a letter written by Attorney Harris on March 3, 2004 in which such counsel states, in part, that if the Death Notice had been withdrawn prior to the plea proceeding, and Williamson could have gone to trial without there being the threat of the death penalty, then Williamson "would have been informed of this fact and we would likely have gone to trial." *See* Supporting Mem. at Exh. A ("March, 2004 Letter").

Any claim that either Williamson or his counsel was unaware that the Death Notice was withdrawn prior to the time petitioner formally entered his guilty plea is belied by the record.  As noted above, at the commencement of the hearing at which Williamson was to plead guilty, and before petitioner was questioned, in any way, about his change of plea, Judge McGrath noted that the District Attorney had withdrawn the Death Notice.  Plea Tr. at p. 2.  Neither Williamson nor his counsel suggested at that time that they were unaware that Death Notice was being withdrawn.  Instead, Williamson *specifically acknowledged* that the statements which had been made at the proceeding prior to the time at which Williamson entered his change of plea comported with his understanding of the case, and he thereafter affirmatively declared that he

wished to enter a plea of guilty to the first degree murder charge.  *Id.* at p. 3.

The assertions made by Attorney Harris in his March, 2004 letter are entirely consistent with the above-mentioned facts.  Specifically, counsel's statements in that letter that:  i) the death notice was not withdrawn prior to the hearing at which Williamson entered his plea; and ii) such notice was still outstanding until the hearing regarding Williamson's change of plea commenced, in no way support petitioner's current argument that such letter establishes that "a constitutional violation occurred ... at the plea stage."  Rather, as the Appellate Division noted, the record establishes that, following negotiations between the District Attorney and defense counsel:

> A plea agreement was reached whereby [Williamson] would enter a guilty plea to the crime of murder in the first degree and, thus, avoid imposition of the death penalty.  In the subsequent plea proceedings before County Court, the prosecution orally withdrew its notice of intent to seek the death penalty.

*Williamson*, 301 A.D.2d at 860.[10]

Although petitioner now argues that his counsel was ineffective in failing to ascertain whether the Death Notice was withdrawn before the guilty plea commenced, it is patent that the removal of such notice was part of the negotiations in which defense counsel had engaged with the District Attorney – negotiations which, as Judge McGrath sagely noted, "eliminate[d Williamson's] exposure to the death penalty."  *See* August, 2000 Order at p. 4.[11]

---

[10] Significantly, Attorney Harris never claims in his March, 2004 Letter – and could not properly assert in light of the plea transcript – that the death notice was ***never*** withdrawn.  Nor does he claim that the guilty plea was formally taken by the County Court before the Death Notice was orally withdrawn.  *See* March, 2004 Letter.

[11] Williamson has cited no case, and this Court has located no precedent, which stands for the proposition that a Death Notice must be withdrawn sometime before the proceeding at which the defendant will ultimately plead guilty commences.

Williamson also argues that the County Court did not have jurisdiction to accept the guilty plea because "the death notice [was] still pending over petitioner's head" when the plea was accepted by Judge McGrath.  Supporting Mem. at pp. 47-48.  He further faults trial counsel for allowing Williamson to plead guilty to "a statute he knew was unconstitutional."  *Id.* at p. 45.

As to Williamson's claim regarding the status of the Death Notice at the time of the plea, such claim is refuted by the record and is therefore plainly without substance.

Turning to petitioner's argument that trial counsel "knew" that the death penalty statute in New York was unconstitutional, but nevertheless persuaded Williamson to enter the guilty plea, he cites two cases in support of this claim, *People v. Hale*, 173 Misc.2d 140 (N.Y.Sup. 1997) and *People v. Mateo*, 175 Misc 2d. 192 (N.Y.Co.Ct. 1997).

In *Mateo*, the court denied the defendant's challenges to the constitutionality of New York's death penalty.  *Id.*, 175 Misc 2d. at 199-202.  That case, therefore, does not support petitioner's argument that defense counsel "knew" that New York's death penalty statute was unconstitutional.  The *Hale* court, however, found New York's death penalty to be constitutionally infirm in light of *Jackson.  See Hale*, 173 Misc.2d at 185.  Thus, that case supports petitioner's argument that defense counsel wrongfully failed to fully pursue a constitutional challenge to the death penalty statute.[12]  However, *Hale* was decided in January, 1996.  Subsequent to that case – and prior to Williamson's guilty plea – Dutchess County Court Judge George D. Marlow, in *People v. McIntosh*, 173 Misc.2d 727 (Dutchess Cty. Ct. 1997), specifically ***rejected*** a constitutional challenge to New York's death penalty based upon an argument that a death

---

[12] Defense counsel had filed a challenge to the constitutionality of the death penalty statute but such motion was withdrawn at the time of his plea.  *See* R.App. at p. RA23, ¶ 5; *see also* Plea Tr. at pp. 12-13.

18

sentence could only be imposed upon a conviction after trial and not as the result of a guilty plea. *McIntosh*, 173 Misc.2d at 728-35.  Since there was conflicting case law regarding the statute's constitutionality at the time of Williamson's plea, counsel may well have made the strategic decision to withdraw the constitutional challenge had he had filed regarding the death penalty statute to secure a plea agreement that eliminated the possibility that Williamson could be executed.

Thus, his claims that his trial counsel rendered ineffective assistance are without substance.

### (b)    Appellate Counsel

In support of his claims challenging the performance of his appellate counsel, Williamson principally argues that such counsel wrongfully failed to argue that:  i) trial counsel rendered ineffective assistance; and ii) the County Court lacked jurisdiction to accept the guilty plea because the District Attorney did not follow statutory mandates when he orally withdrew the Death Notice.  *See* Petition, Ground Three; Supporting Mem. at pp. 42-56.

However, because this Court has determined that Williamson's claims challenging trial counsel's performance are without substance, appellate counsel cannot be found to have provided constitutionally deficient representation by failing to assert an ineffective assistance claim relating to defense counsel on appeal.  *See DeVivo v. Superintendent, Auburn Correctional Facility*, No. 02-CV-0840, 2006 WL 581145, at *18 (N.D.N.Y. Mar. 8, 2006) (citations omitted) (Kahn, J., adopting Report-Recommendation of Magistrate Judge David E. Peebles), *appeal dismissed*, *DeVivo v. Goord*, No. 06-2279-pr (2d Cir. June 13, 2007).  In other words, appellate counsel cannot be found to have rendered ineffective assistance by failing to assert a meritless claim on

appeal.  *See Lopez v. Fischer*, No. 05 CIV.2558, 2006 WL 2996548, at *12 (S.D.N.Y. Oct. 16,

2006) ("petitioner cannot show that appellate counsel's failure to raise [meritless] claims on direct

appeal renders his representation below an objective standard of reasonableness, nor can petitioner

show that had these claims been presented on appeal, his outcome would have been any

different"); *Melenciano v. Walsh*, No. 02 CIV.9593, 2005 WL 768591, at *8 (S.D.N.Y. Apr. 6,

2005) ("[w]here the underlying claim is without merit, the claim of ineffective assistance of

counsel for not raising the issue ... is, likewise, meritless") (citations omitted).

   As to Williamson's claim that appellate counsel wrongfully failed to argue that the County

Court lacked jurisdiction to entertain the plea because the prosecutor did not properly withdraw

the Death Notice, this argument appears to overlook the fact that the Third Department upheld the

validity of the guilty plea, *see Williamson*, 301 A.D.2d at 861-62, and denied this identical claim

challenging appellate counsel's performance when raised by Williamson in his July, 2005 CNA.

*See Williamson*, No. 16331, slip op. at 1.  That court therefore implicitly found that the County

Court **had** jurisdiction over Williamson, because it is settled law that "[t]he want of jurisdiction

makes the order and judgment of the court, and the record of its action utterly void and

unavailable for any purpose."  *People v. Cuadrado*, 37 A.D.3d 218, 230 (1st Dept. 2007) (internal

quotation and citations omitted).  Regardless, even assuming, *arguendo*, that appellate counsel's

failure to raise such issue on appeal was objectively unreasonable, Williamson plainly cannot

demonstrate that he was prejudiced by such conduct, which, in this context, requires proof that he

likely would have prevailed on such a claim if brought before the appellate court by counsel.  *E.g.*,

*Robbins*, 528 U.S. at 285-86 (citing *Strickland*).

   Since Williamson has not demonstrated that the state court decisions denying his claims

alleging ineffective assistance of trial and/or appellate counsel are either contrary to, or represent an unreasonable application of, *Strickland* and its progeny, the Court denies his second and third grounds for relief.

### 3.    Ground Four

In his fourth ground, Williamson asserts that the judgment of conviction was "obtained in violation of Due Process."  Petition, Ground Four.  Specifically, he asserts that the CPL mandated that he be served with a written notice of the prosecution's intent to withdraw the Death Notice, and because neither he nor his attorney waived that procedural prerequisite in the criminal matter below, his conviction must be set aside.  *See* Supporting Mem. at pp. 43-44 (citing CPL § 250.40(4)).  In support of this ground, he principally relies on the case of *People v. Patterson*, 39 N.Y.2d 288 (1976).  *See* Supporting Mem. at pp. 43-45.

Unfortunately for Williamson, this claim appears to overlook the well-settled legal precept that alleged violations of state procedural laws do not give rise to federal grounds for habeas relief.  *Garson v. Perlman*, 541 F.Supp.2d 515, 527 (E.D.N.Y. 2008) (claimed violations of "state criminal procedural and substantive statutes" do not give rise to federal habeas claims) (citations omitted); *see also Welch v. Artus*, No. 04-CV-205, 2007 WL 949652, at *39 (W.D.N.Y. Mar. 29, 2007) (alleged violation of CPL "is not cognizable on habeas review") (citations omitted).

Finally, Williamson's claim that he could not properly consent to the oral withdrawal of the Death Notice in light of the New York Court of Appeals' decision in *Patterson* is unavailing.

In *Patterson*, the court held that a "very narrow exception" exists in New York law as to when a defendant can waive, through his silence, a right afforded him under the CPL.  The *Patterson* court then specifically opined that a defendant in a criminal case "cannot waive, or even

21

consent to, error that would affect the organization of the court or the mode of proceedings proscribed by law." *Id.*, 39 N.Y.2d at 295.  However, Williamson has cited no authority – and this Court could locate none – which stands for the proposition that the failure to comply with the written notice portion of CPL § 250.40(4) affects either the organization of the court or the mode of proceedings proscribed by law such that Williamson could not have properly waived the provision of the CPL which provides that the withdrawal notice be in writing.[13]  In fact, at least one published decision in New York has specifically held that a guilty plea is valid despite the fact that the withdrawal of the notice of intent to seek the death penalty was oral rather than in writing. *See People v. Smelefsky*, 182 Misc.2d 11, 15-20 & n.3 (N.Y.Sup. Ct. 1999).

In light of the foregoing, Williamson's fourth and final ground for relief is denied.

## III.   Certificate of Appealability

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court ....[14]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant has

---

[13] The facts that:  i) the Appellate Division was plainly aware that no written withdrawal of the Death Notice was ever filed by the prosecution but nevertheless affirmed the conviction; and ii) the Court of Appeals denied Williamson leave to appeal that decision of the Third Department, strongly suggest that a defendant ***could*** properly consent to an oral withdrawal of the notice of the prosecutor's intent to seek the death penalty.

[14] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." *See* Fed.R.App.P. 22(b).

made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**WHEREFORE**, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED**, that Williamson's petition (Dkt. No. 1) is **DENIED** and **DISMISSED**, and it is further

**ORDERED**, that the Clerk of Court serve a copy of this Memorandum-Decision and Order upon the parties to this action by electronic or regular mail, and it is further

**ORDERED**, that any state court records that were not filed in this action be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party).

A Certificate of Appealability shall not be issued by this Court.

**IT IS SO ORDERED.**

Dated: February 24, 2009

United States District Court Judge